Filed 11/8/21  P. v. White CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND WHITE, JR.,<br><br>Defendant and Appellant. | F079449<br><br>(Super. Ct. No. F15907916)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Raymond White, Jr. viciously stabbed a therapist at a rehabilitation center.  He was primarily charged with attempted murder and pled both not guilty and not guilty by reason of insanity.  The case proceeded to jury trial.

After the jury found White guilty as charged, the prosecutor moved for a directed verdict on sanity. The court granted the motion and found White sane.[1] White now contends the court erred in its finding and in not submitting the issue to the jury. We disagree and, aside from modifying certain sentencing enhancements discussed below, will affirm.

## BACKGROUND

**Charges**

The Fresno County District Attorney charged White with committing two crimes: Attempted murder (Pen. Code,[2] §§ 664 & 187, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)). The charges included enhancements for using a weapon (§ 12022, subd. (b)) and causing great bodily injury (§ 12022.7, subd. (a)). Sentencing enhancements alleged Three Strikes (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and prior prison terms (§§ 667.5, subds. (a) & (b)).

**Trial Evidence**

The victim was "volunteering as a … therapist" at a rehabilitation center. White was an occasional patient. One day, White approached the victim in a room, closed the door, and "block[ed]" it. After some conversation, White asked her for candy and, when she turned around to oblige, attacked her with a knife. The victim was stabbed numerous times including "in the neck" and "into [the] head …." White ran away but was quickly apprehended nearby.

A law enforcement officer interviewed White. White initially denied any involvement but ultimately confessed. He admitted to "plann[ing]" the attack and "want[ing] that bitch dead." "He felt … betrayed" by the victim because he thought she

---

[1] As mentioned below, the record is ambiguous as to the exact nature of the trial court's ruling. Throughout the opinion we refer to its ruling as a finding White was sane.

[2] All statutory references are to the Penal Code.

"was showing affection to another client …." He claimed he "blacked out" during the attack and could not remember "how many times [he] stabbed her." He disclaimed lack of antipsychotic medication as an excuse or explanation for the stabbing.

White testified that, during the incident time period, he suffered from "visual and auditory hallucinations," "seeing and hearing things, like … loud demon[ic] voices and screams." On the day of the attack he "felt emotionally … disturbed" and "kept hearing voices and seeing things, like, dark moving shadows." The voices made him "angry" but "really didn't tell [him] anything" specific. Other than these experiences, White repeatedly denied "recall[ing]" or "remember[ing]" the day.

In a recorded phone call, White told his father he tried to kill the victim and remembered everything that happened. He said he felt disrespected and jealous because the victim interacted with other men "[a]nd that shit pissed [him] off so [he] tried to kill her." He briefly mentioned he "got possessed."

A forensic psychiatrist diagnosed White with certain mental "disorder[s]."[3] The psychiatrist explained "mental disorders" are "cycl[ical]" and may cause "propensity [for] violence …." He did not believe White was feigning a "mental illness …."

**Verdict**

The jury found White guilty as charged. The court subsequently directed a verdict finding White sane. The jury then found the sentencing allegations true. White was sentenced to serve 41 years to life in prison.

## DISCUSSION

This appeal presents three questions. Did the court err by finding White sane and not allowing the jury to decide the issue? Did the People sufficiently prove the section 667.5, subdivision (a), enhancements? Are the section 667.5, subdivision (b),

---

[3] Although certainly material and relevant, in an effort to protect White's privacy, we will not further publicize his specific diagnoses.

3.

enhancements still valid?  We conclude the court did not err, but that all section 667.5 enhancements must be stricken.

## I.  The Court Did Not Err

White contends the sanity finding was error "because it is clear the trial court did not assiduously apply the correct standard for directing a verdict of sanity."  The People argue the court did not err because "none of the evidence demonstrated that [White] was incapable of knowing or understanding the nature and quality of his acts or distinguishing right from wrong," i.e., the legal standard for insanity.  (Pen. Code, § 25, subd. (b).)  We agree with the People.

### A. Additional Background

After the jury announced its verdict, the prosecutor moved for a directed verdict on sanity.  White's counsel claimed White was "incapable of knowing … the nature and quality of his act" because if "he is blacking out" then "he doesn't know anything at the time of the act."  Counsel "theoretically" tied "blacking out" to a "mental disease or defect."  Counsel acknowledged his argument was based on White's testimony "that he doesn't remember anything."

The People argued "there was no evidence [White] didn't understand the nature and quality of his act and distinguishing from right and wrong …."  The court subsequently concluded, "[T]he only evidence … currently available for argument would at best require a jury to speculate about things that are not part of the evidence in the case.  …  [I]n addition based on the fact that all experts that have opined as to Mr. White's sanity or insanity ha[ve] stated that he was sane at the time,[4] the Court does not believe that there is sufficient and in fact any evidence that would allow the jury to reach a verdict that by a preponderance of the evidence Mr. White [was] not sane at the

---

[4] These expert opinions the court referred to were not admitted into evidence. They were marked as exhibits and preserved for the record.

4.

time that he committed [this crime]. And so for that reason, as to the sanity phase, the Court is striking the [insanity] plea, whether that be in the form of a directed verdict or a [section] 1385 dismissal of the [insanity] plea ….”[5]

### B. Analysis

“ ‘[I]nsanity is established if the defendant was unable,’ ” due to mental disease or defect, “ ‘either to understand the nature and quality of the criminal act, or to distinguish right from wrong when the act was committed.’ ” (*People v. Powell* (2018) 5 Cal.5th 921, 955 (*Powell*).) “ ‘[W]rong,’ in the sanity context, means the violation of generally accepted standards of moral obligation.” (*People v. Stress* (1988) 205 Cal.App.3d 1259, 1275 (*Stress*).)

“In a sanity trial, the burden is on the defendant to prove insanity by a preponderance of the evidence.” (*Powell, supra,* 5 Cal.5th at p. 955.) “On appeal, we review a directed verdict de novo.” (*People v. Severance* (2006) 138 Cal.App.4th 305, 319 (*Severance*).) “[W]e … apply the substantial evidence standard of review” and “look for substantial evidence from which the jury reasonably could have found defendant was *not* sane. If we find such evidence, then a directed verdict of sanity was improper.” (*Id.* at p. 320.)

White “urges” us “to find the evidence … sufficient for a jury to reasonably find [he] was insane ….”[6] He points to evidence “he had blacked out” or “acted due to a relationship he had with the victim” as sufficient to prove insanity. He is mistaken.

---

[5] In so doing, the trial court explicitly relied upon the authority of *People v. Ceja* (2003) 106 Cal.App.4th 1071. The accompanying minute order states: “The Court finds insufficient evidence put on by the defense for Findings of the Sanity Phase.”

[6] White also faults the court for “discount[ing]” his testimony, relying on two expert witnesses that believed he was sane, and “fail[ing] to disregard conflicting evidence ….” We need not reach these issues because we independently review the record. (See *Severance, supra,* 138 Cal.App.4th at p. 321 [trial court error in usurping jury's factfinding role harmless because appellate court reviews record de novo].)

There was, of course, evidence White "blacked out" during the attack. He said so in his interview with law enforcement. There was no additional evidence, however, connecting the "black[] out" to a specific mental disease or defect. For example, White did not establish a pattern or history relating "black[] out[s]" to a mental disease. Nor did the forensic psychiatrist establish a general or specific relationship between White's diagnoses and "black[] out[s]." One could perhaps speculate and find a connection between the two. But speculation is unwarranted and not substantial evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735.)

More specifically, the evidence regarding White's "black[] out" or "possess[ion]" during the stabbing was fleeting and unexplained. There was nothing to differentiate a blind, jealous rage from a psychotic break. Because White bore the burden of proof, it was incumbent upon him to introduce evidence establishing a link to a mental disorder. He did not. Instead, he repeatedly testified without elaboration he could not recall or remember the incident. On this record, it is unreasonable to infer his lapsing memory was due to a mental illness.

As to the "relationship" theory, there is a total evidentiary void connecting it to any concept of morality. Although White explained he felt romantically betrayed by the victim, there was no evidence he believed his attack was morally just. Two cases illuminate the void.

In *People v. Skinner* (1985) 39 Cal.3d 765, the defendant believed he had "a God-given right to kill" his wife if she "violated or was inclined to violate the marital vows …." (*Id.* at p. 770.) He believed such a killing "is not wrongful because it is sanctified by the will and desire of God." (*Ibid.*)

In *Stress, supra,* 205 Cal.App.3d 1259, the defendant killed his wife to obtain a forum to expose certain conspiracies to the public. (*Id.* at pp. 1262-1264.) He believed the killing was morally proper because it "would contribute to some higher good." (*Id.* at p. 1275.)

6.

In contrast to these cases, the record in this case discloses no such moral justification. Even if White mistakenly felt betrayed due to a mental illness, there is no *further* evidence he believed his attack was morally justified. "A [person] 'may suffer from a diagnosable mental illness without [also] being legally insane ….' "[7] (*Powell, supra,* 5 Cal.5th at p. 955.) At *best*, that describes White's case. At *worst*, he stabbed the victim in a jealous rage. Again, he bore the burden to prove insanity but introduced no evidence to establish a moral justification. (See *Severance, supra,* 138 Cal.App.4th at p. 323 [insufficient evidence of insanity where no evidence introduced regarding morality]; see also *People v. Blakely* (2014) 230 Cal.App.4th 771, 779—781.)

Ultimately, notwithstanding the overwhelming evidence White's jealous infatuation culminated in the victim's life-threatening injuries, we would readily overturn the court's sanity finding were there any competing evidence White was insane. But we discern none. Accordingly, the sanity verdict will stand.

## II.  The People Did Not Prove The Section 667.5, Subdivision (a), Enhancement

The sentence in this case was enhanced[8] by one 667.5, subdivision (a), enhancement. That section requires an enhanced sentence for prior "violent felon[y]" convictions for which the defendant served a prison term.[9] For this purpose, section 667.5, subdivision (c), defines statutorily violent crimes.

---

[7] It is important to note mental illness may establish a factual defense to a crime. Such evidence is admissible to negate a specific mental state. (§ 28, subd. (a).) Indeed, White's counsel argued to the jury , "Would he attempt to kill if he was not mentally ill? … [D]id he []form the intent to kill with his … mental issue that he has[?]" The jury simply did not resolve the facts in his favor.

[8] Punishment for this enhancement was stayed.

[9] Strictly speaking, the enhancement applies only where the current conviction is a "violent felon[y]" and the defendant has not "remained free of both prison custody and the commission of an offense which results in a felony conviction" for 10 years after the prior prison term. (§ 667.5, subd. (a).)

The People failed to prove White's prior conviction was statutorily violent. In fact, such proof is impossible because the prior conviction alleged here is simply not violent as defined by law.[10] We will order the enhancement stricken in the disposition.

### III. The Section 667.5, Subdivision (b), Enhancements Are No Longer Valid

The sentence in this case included two one-year enhancements for serving three prior prison terms. (§ 667.5, subd. (b).) Senate Bill No. 136 (2019-2020 Reg. Sess., § 1), amended "section 667.5, subdivision (b), to eliminate the … prior prison term enhancement for most prior convictions. [Citation.] An exception, not applicable here, is made for a qualifying prior conviction on a sexually violent offense …. [¶] Because [the amendment] became effective before [White's] judgment became final, … the amended law applies to him retroactively." (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 876.) We will also order these enhancements stricken.[11]

---

[10] White's alleged prior conviction under section 667.5, subdivision (a), was for attempted robbery. Attempted robbery is not a statutorily violent crime. (§ 667.5, subd. (c).) The People concede the failure of proof.

[11] The People concede.

## **DISPOSITION**

All section 667.5 enhancements are stricken.  The trial court is directed to issue an amended abstract of judgment and forward it to the proper authorities.  The judgment is otherwise affirmed.


                                                            SNAUFFER, J.

WE CONCUR:


FRANSON, ACTING P. J.


PEÑA, J.

9.